MICHAEL TONSELLITO, AN INFANT, WHO SUES, ETC.,
RESPONDENT, v. THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, APPELLANT.

JAMES TONSELLITO, RESPONDENT, v. THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COMPANY,
APPELLANT.

Submitted March 22, 1915—Decided June 14, 1915.

1. Where the infant plaintiff, about seventeen years of age, was em-
ployed by defendant, a carrier engaged in interstate commerce,
to fire its engine preparatory to the same being attached to a
train scheduled to run from Weehawken, New Jersey, to Ra-
venna, in New York, and while assisting in operating the engine
in the railroad yard for the purpose of taking on a barrel of oil
to be carried on the engine to Ravenna, the plaintiff was injured
—*Held*, that at the time of the accident the plaintiff and de-
fendant were engaged in interstate commerce within the meaning
of the terms of the Federal Employers' Liability act.
2. The questions arising upon the controverted testimony as to the
negligence of the defendant, under the circumstances, and as to
the assumption of risk by the plaintiff, *Held*, to be jury questions.
3. In the suit by the father to recover damages sustained by reason
of the injury to the infant plaintiff—*Held*, that the Federal Em-
ployers' Liability act does not by its terms extend to the com-
mon law right of the father, and that in the absence of a clear
legislative intent to so apply it, the common law right of recovery
in the father subsists.

On appeal from the Hudson Circuit.

For the plaintiffs-respondents, *Alexander Simpson.*

For the defendant-appellant, *Vredenburgh, Wall & Carey.*

The opinion of the court was delivered by

MINTURN, J. These appeals practically involve but one
question. The first presents the injury to the son, a young
man about seventeen years of age, while employed by de-
fendant upon a locomotive at its yard in Weehawken, and

the other the resulting injury to the father by reason of the boy's injury. The young man was engaged as a general worker in the railroad yard. Occasionally he was put to work at firing locomotives preparatory to making their schedule trips. Such was his occupation upon the day of the accident.

The locomotive upon which he was working was about to be attached to a train running between Weehawken in this state, and Ravenna in the State of New York. The work of firing her was preparatory to the entrance of the regular engineer who would take her in charge and operate her upon her schedule trip between the states. During this interim of waiting it became necessary to take on a barrel of oil from an adjacent storehouse, and a substitute for the engineer named Ohe, drove the engine in the direction of the storehouse. Michael Tonsellito, the plaintiff, left the engine en route in order to adjust a switch, and having done this he attempted to again board the engine and while engaged in that act the engine was started and he was thrown under the wheels and sustained the injuries complained of.

The action was brought under the provisions of the Federal Employers' Liability act of 1908. The cases were tried together and a verdict for the plaintiff was rendered in each case. The fundamental inquiry in the case presented by defendant is whether the plaintiff Michael and defendant were engaged in interstate commerce at the time of the accident. The act in question has received a construction by this court in two instances.

In *Pierson v. New York, Susquehanna and Western Railroad*, 83 *N. J. L.* 661, the plaintiff was engaged in removing old rails between two points upon the railroad within this state and supplanting them with new ones. While engaged with others in removing a new rail from the car to a point where it was intended to locate it, preparatory to placing it in position, one end of it dropped from the hands of those holding it and injured the plaintiff. We there held applying the construction given to the federal act by the United States Supreme Court in *Mondou v. New York, New Haven*

*and Hartford Railroad Co., 223 U. S. 1,* and by the United States Circuit Court of Appeals for the Third Circuit in *Pederson v. Delaware, Lackawanna and Western Railroad, 197 Fed. Rep. 537,* that the work of installing new rails between interstate points on an interstate and intrastate roadbed, was not engaging in interstate commerce at all, but a preparation for engaging therein in the future.

In *Granger v. Pennsylvania Railroad, 84 N. J. L. 338,* the plaintiff when injured was engaged in placing a cover over the mechanism of a switch which he had just oiled when he was struck and injured by a shunted car.

The tracks were used for interstate and intrastate traffic, as the railroad business might require, and we there held that neither the car nor the plaintiff was engaged at the time of the accident in interstate commerce.

Since the adjudication of those cases the case of *Pederson v. Delaware, Lackawanna and Western Railroad, supra,* has been considered on appeal by the United States Supreme Court in 229 U. S. 146, and the judgment of the Circuit Court of Appeals was reversed.

The facts in that case will bear recital, if for no other purpose than to evince the liberality of view adopted by the Federal Supreme Court in the construction of the act *sub judice.* The defendant was operating an interstate and intrastate railroad for the transportation of passengers and freight. The plaintiff, an iron worker, was employed in the alteration and repair of some of its bridges and tracks within this state. While carrying bolts or rivets over a temporary bridge from a tool car to a bridge then in process of repair, both bridges being used by defendant in both kinds of commerce, the plaintiff was run down and injured by an intrastate passenger train of whose approach the engineer in charge had failed to give warning. *Inter alia,* the court decided and laid down this inquiry as the test of the defendant's liability under the federal act, viz.: "Is the work in question a part of the interstate commerce in which the carrier is engaged?" Answering that inquiry in the affirmative in the case *sub judice,* and applying the inquiry to the facts presented, the

court stated: "It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of a larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce," citing *Lamphere* v. *Oregon R. & N. Co.,* 196 *Fed. Rep.* 336; *Johnson* v. *Southern Pacific Co.,* 196 *U. S.* 1.

The reasoning of that case we conceive to be dispositive of the case at bar. Where it is indisputable under the testimony that the engine upon which the plaintiff Michael was employed was preparing for its interstate trip at the time of the accident, and was actually proceeding to take on a barrel of oil which was destined for transportation from the storehouse of defendant at Granton, in New Jersey, to its storehouse at Ravenna, in the State of New York. Such a situation necessarily requires an affirmative answer to the test: "Is the work in question a part of the interstate commerce in which the carrier is engaged?" The decision in the Pederson case was followed by the decision in *Illinois Central Railroad* v. *Behrens,* 233 *U. S.* 473. That case presents the direct antithesis of the former case, and serves to enunciate distinctly the clear line of demarcation which the Federal Supreme Court has applied in the construction of this legislation. These cases, with exhaustive annotations, are also found in 33 *Am. & Eng. Ann. Cas.* 163.

We are not concerned on this appeal with the question of the relative weight of the testimony as to the negligence of the defendant in the operation of its engine or the alleged defect of its roadbed. There is testimony in the case from which both may be legitimately inferred, as well as the question whether the risk was so obvious that the plaintiff assumed it. *Burns* v. *Telegraph Co.,* 70 *N. J. L.* 745.

The weight and credibility of this testimony, contrasted with the facts adduced in behalf of the defendant's contentions, were questions for the consideration of the jury.

The motions for a nonsuit and to direct a verdict for defendant were therefore properly refused. *Dickinson* v. *Erie Railroad*, 85 *N. J. L.* 586; *Clark* v. *Public Service Co.*, 86 *Id.* 144.

The existence of contributory negligence under the provisions of the federal act is made a basis not as at common law for a judgment of nonsuit, but the statute adopts the admiralty rule of diminishing the damages "in proportion to the amount of negligence attributable to such employe." That feature of the case is therefore not before us upon this appeal.

The plaintiff, James Tonsellito, claims as father of the infant plaintiff, Michael, and recovered a verdict of $1,000. The defendant contends that the federal statute concedes no such right of action in the father, and limits recovery to the personal representative only in case of death for the benefit of the next of kin. But we do not construe the federal act as repealing either expressly or impliedly the father's right of action as it existed at common law. It purports to deal only with cases involving the death of the employe, and in the absence of an intent clearly expressed or necessarily implied that congress intended to take away by this corrective or remedial act the legal status of third parties as fixed by the immemorial rules of the common law, we must assume that such legal rights still subsist unimpaired.

The rule of construction is "that an affirmative statute giving a new right does not of itself and of necessity destroy a previously existing right." *Broom Max.* 508; *O'Flaherty* v. *McDowell*, 6 *H. L. Cas.* 142.

And so it is held that statutes which take away, change or diminish fundamental rights, statutory remedies for rights unknown to the common law, and statutes which provide new and extraordinary remedies, must be strictly construed, both as to the cases mentioned within their terms, and as to methods to be pursued. 36 *Cyc.* 1188, and cases cited.

Our examination of the remaining exceptions contained in the record has led us to conclude that they were non-

injurious to the defendant in the view of the case here presented.

The judgment under review will therefore be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Vredenburgh, White, Heppenheimer, JJ. 11.

*For reversal*—None.